UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**BOBBY BARBER**                                                                                              **PLAINTIFF**

**v.**                                                                      **CIVIL ACTION NO. 5:21-CV-P88-TBR**

**LT. JARED J. THOMPSON et al.**                                                              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff, Bobby Barber, a prisoner, initiated this 42 U.S.C. § 1983 action. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the following reasons, the Court will dismiss some claims and will allow others to proceed.

### I. STATEMENT OF THE CLAIMS

Plaintiff, an inmate at the Kentucky State Penitentiary (KSP), names as Defendants in their individual and official capacities KSP Lieutenant Jared J. Thompson, KSP Sergeant Cortez Butler, and KSP Engineer John Davis. He alleges that Defendants used excessive force on him while he was held down on the ground and handcuffed. Specifically, he states:

> On January 21, 2021 at around 5:59 p.m., while being escorted to 7 cellhouse due to an altercation with staff, I was slammed on the ground, while handcuffed behind my back[.] I was being escorted by Sgt. Cortez Butler and engineer John Davis. Once of the ground laying on my stomach, Lt. Jared J. Thompson shot me with the x-26 handheld stun device (WP-62). After the pain subsides, [Defendant] Thompson again tases me in the left should blade, but this time it's a dry stun. When I was tased by [Defendant] Thompson, I was being held down by [Defendants Butler and Davis].

Plaintiff further alleges that Defendant Thompson was the yard supervisor and therefore would know that tasing an inmate while he is handcuffed and held down by officers is excessive.

As relief he asks for monetary and punitive damages and an order for Defendants to stop tasing inmates while they are restrained.

Plaintiff attaches to the complaint a disciplinary report indicating that he pleaded guilty to eluding or resisting apprehension while being escorted to cell house 7. That disciplinary report details a different version of events than alleged in the complaint. The report states that Plaintiff resisted staff and kicked at them *after* he was placed on the ground for control by Defendants Davis and Butler, resulting in Defendant Thompson deploying his stun gun to gain control of Plaintiff.

According to the disciplinary report, Plaintiff pleaded guilty. Because the report did not state what disciplinary action was taken against him as a result of his guilty plea, the Court ordered Plaintiff to provide more information before the Court screened his complaint.

Plaintiff has filed his response (DN 6), which consists of two disciplinary reports from events on January 21, 2021. Disciplinary Report KSP-2021-253 involved the offense of eluding or resisting apprehension to which he pleaded guilty and which is related to the complaint. His punishment was 30 days of restricted housing with 10 days with credit for time served and restitution in the amount of $33.00. The second disciplinary report, KSP-2021-214, was a charge of physical action resulting in death or injury of an employee. Both disciplinary reports include the following investigation findings which concern the same allegations in his complaint:

> Inmate Barber was escorted down the stairs by Engineer McLevain and Engineer Davis. At approximately 5:52 p.m., Inmate Barber was escorted to Seven Cell house. Sergeant Butler took over escort for Engineer McLevain and proceeded to Seven Cellhouse. At approximately 5:58 p.m., Lieutenant Thompson deployed one dart pack from X-26 Taser #WP62 due to him resisting and fighting with staff while being escorted.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### A. Excessive-force claim

Where a § 1983 action alleges constitutional violations which would necessarily imply the invalidity of the prisoner's prison disciplinary hearing resulting in imposition of a sanction

affecting the overall length of confinement, such a claim is not cognizable under § 1983 unless the conviction or sentence has first been invalidated on appeal, by habeas petition, or through some similar proceeding. *See Heck v. Humphrey*, 512 U.S. 477, 483-84 (1994); *see also Muhammad v. Close*, 540 U.S. 749, 750-51 (2004) (per curiam); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (extending *Heck* doctrine to prison administrative proceedings that result in the deprivation of good-time credits).

It appears from the disciplinary report for injuring an employee submitted by Plaintiff that the officer who Plaintiff was disciplined for assaulting was Officer Todd:

> [O]n January 21, 2021, at approximately 5:50 p.m. Officer Nathaniel Todd and himself were completing let-in on the First Floor of Five Cellhouse when Inmate Barber, Bobby #245087 was walking the walk. Officer Todd and Officer Brannon approached Inmate Barber and informed him to return to his cell. Inmate Barber then began to assault Officer Todd. Officer Todd deployed a burst of O.C. to the facial region of Inmate Barber. Inmate Barber then went after Officer Todd which resulted in them wrestling around.

Thus, it appears that the alleged excessive force used by Defendants while Plaintiff was handcuffed in this case is a separate incident than the one in which Plaintiff was convicted of causing death or injury to an employee, which is the disciplinary action for which the punishment he received affected his sentence.

Where success in a prisoner's § 1983 action would not necessarily affect the duration of his underlying sentence or imply immediate or speedier release from confinement, the action is not barred by *Heck* and its progeny. *See Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007). Moreover, according to Plaintiff's version of the events, excessive force was used against him after he no longer posed a threat. *See Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 611–12 (6th Cir. 2014) (noting that the doctrine set forth in *Heck* may not bar § 1983 claims alleging that excessive force occurred after

the suspect ceases resisting). The Court will allow Plaintiff's Eighth Amendment claim for excessive force to continue against Defendants in their individual capacities.

However, the Court will dismiss the individual-capacity claim against Defendant Thompson for supervisory liability and the official-capacity claims for monetary damages for all Defendants for the reasons discussed below.

### B. Supervisory liability claim

In his claim labeled "Supervisory Liability," Plaintiff alleges that Defendant Thompson was the "yard supervisor" and that "a supervisor would know to tase an inmate while hes handcuffed behind his back and being held down . . . is excessive." To the extent that Plaintiff is claiming a separate cause of action against Defendant Thompson solely based on being a supervisor, that claim fails.

The doctrine of supervisory liability, also known as *respondeat superior*, does not apply in § 1983 actions to impute liability to supervisors. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir.1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Rather, to establish supervisory liability in a § 1983 action, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy*, 729 F.2d at 421 (citing *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 872-74 (6th Cir. 1982)). "[L]iability of supervisory personnel must be based on more than merely the right to control employees." *Hays*, 668 F.2d at 872. Here, Plaintiff alleges that Defendant Thompson actively participated in the alleged unconstitutional use of excessive force. The claim against him will be allowed to proceed based on his alleged active behavior, not simply because of his status as a supervisor. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that

supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).

### *C. Official-capacity claims*

"[O]fficial-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Claims brought against state employees in their official capacities are deemed claims against the Commonwealth of Kentucky. *See Kentucky v. Graham*, 473 U.S. at 166. States, state agencies, and state employees sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, because Plaintiff seeks money damages from state employees in their official capacities, he fails to allege cognizable claims under § 1983. Further, the Eleventh Amendment acts as a bar to claims for monetary damages against a state, its agencies, and state employees or officers sued in their official capacities. *Kentucky v. Graham*, 473 U.S. at 169. Therefore, the Court will dismiss Plaintiff's official-capacity claims for monetary relief.

### III. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's individual-capacity claim against Defendant Thompson based on supervisory liability is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Plaintiff's official-capacity claims for monetary damages against all Defendants are **DISMISSED** for failure to state a claim upon which relief

may be granted and for seeking monetary relief from Defendants who are immune from such relief pursuant to 28 U.S.C. § 1915A(b)(1) and (2).

In allowing Plaintiff's Eighth Amendment excessive-force claim to continue against Defendants in their individual capacities for monetary and punitive damages and in their official capacities for injunctive relief, the Court passes no judgment on the ultimate merit of the claims.

The Court will enter a separate Service and Scheduling Order to govern the development of those claims.

Date: March 22, 2022

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

cc: Plaintiff, *pro se*
　　Defendants
　　General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.009